GEORGE WYER *vs.* THE DORCHESTER AND MILTON BANK.

The holder of a bank bill, proved to have been stolen, is not bound to show how he came by the bill, to enable him to recover upon it. The burden of proof is upon the defendant to show that the holder took it under such circumstances that he has no claim upon it.

ASSUMPSIT on a bank bill, of the denomination of fifty dollars, issued by the Dorchester and Milton Bank. The bill was admitted to be genuine, and signed by the president and cashier of said bank. On or about the middle of November, 1850, Messrs. Mumford and Cannon, of Philadelphia, sent the bill to Messrs. Lyman and Wyer, of Boston, with instructions to collect the same, and soon after it was received by Lyman and Wyer, it was presented to the bank and payment was refused. The plaintiff of record, Wyer, had no property or interest in the bill, but permitted his name to be used in the suit for the benefit of Mumford and Cannon, of Philadelphia, so as to dispense with an indorser on the writ.

The defendants showed that the bill was stolen from the bank on or about the second day of June, 1850, and that the bank had never received any value for the same. It was contended on the part of the defendants, that the plaintiff had no title in the bill, and had no right to bring the suit, and that having proved that the bill was stolen from the bank, it was incumbent on the plaintiff to show that he had paid a good and sufficient consideration for the same, or that Mumford and Cannon had paid value for it. Upon this evidence, *Wells,* C. J. in the court of common pleas, directed a verdict for the defendants. To this ruling the plaintiff excepted.

*H. C. Hutchins,* for the plaintiff.

*J. L. English,* for the defendants. Though the production of a note payable to bearer is *primâ facie* evidence of title, yet when the defendant proves that the same was stolen, the burden is then on the plaintiff to show himself a *bonâ fide* holder for value. *Munroe* v. *Cooper,* 5 Pick. 412; *Fabens v. Tirrell,* Law Rep. for May, 1852, p. 44; *Bailey* v. *Bidwell,* 13 Mees. & Welsb. 73; *Smith* v. *Braine,* 16 Ad. & El. N. R. 244; *Harvey* v. *Towers,* 6 Welsb. Hurl. & Gord. 656; *Peterson* v. *Hardacre,* 4 Taunt. 114; 2 Greenl. Ev. § 172.

The same principle applies in a suit on a stolen bank bill against the bank as maker. *Fulton Bank* v. *Phœnix Bank,* 1 Hall's (N. Y.) R. 562; *Solomons* v. *Bank of England,* 13 East, 135; Chitty on Bills, (10th Amer. ed.) 254, 256, 257, 258.

In the absence of any evidence whatever tending to show that the plaintiff or the party for whose benefit he sued in this case came by the bill *bonâ fide,* and in the usual course of business for value, the direction of the presiding judge to the jury was right. *Davis* v. *Maxwell,* 12 Met. 286.

METCALF, J. As these exceptions are framed, the single question in the case is, whether the burden is on the plaintiff, to prove that he, or that Mumford and Cannon, paid a good and sufficient consideration for the bank bill in suit. But the decision of this narrow question would not necessarily decide the merits of the case ; inasmuch as the plaintiff, or those for whom he brings this suit, may have paid a good and sufficient consideration for the bill, and yet have taken it from the thief, knowing that it had been stolen; in which case, they would not be entitled to recover. The counsel have, therefore, argued a broader question, namely, whether the burden is on the holder of a bank bill, which is shown to have been stolen, to prove that he obtained it fairly and under such circumstances as enable him to maintain an action on it. And we are now to decide whether the rule of evidence, which is applied to promissory notes and bills of exchange that are stolen or otherwise fraudulently put into circulation, is applicable to bank bills that are circulated after they have been stolen. In the case of such bills of exchange and promissory

notes, the burden is on the holder to prove that he took them in good faith. *Munroe* v. *Cooper*, 5 Pick. 412 ; *Bailey* v. *Bidwell*, 13 Mees. & Welsb. 76 ; *Mills* v. *Barber*, 2 Gale, 5, 7. According to the recent decisions, that burden is very light. See 10 Cush. 491. But we are of opinion that the rule of evidence is different in the case of a bank bill.

In *Miller* v. *Race*, 1 Bur. 452, the plaintiff took a stolen bank-note in the usual course of his business, for a full and valuable consideration, and without any notice that it had been stolen, and presented it at the bank for payment. A clerk of the bank refused to pay it or to redeliver it; and the holder brought an action of trover against him. No question was raised about the burden of proof, or about the necessity of the plaintiff's proving how he obtained the note. But the case was decided in his favor, on grounds which, in our judgment, are nearly decisive of the question of burden of proof. Lord Mansfield said the action was well brought, and would lie against the defendant, upon the general course of business, and from the consequences to trade and commerce, which would be much incommoded by a contrary determination. And he said, bank-notes " are not goods, nor securities, nor documents for debts, nor are so esteemed ; but are treated as money, as cash, in the ordinary course and transaction of business, by the general consent of mankind, which gives them the credit and currency of money, to all intents and purposes." " A bank-note is constantly and universally, both at home and abroad, treated as money, as cash, and paid and received as such ; and it is necessary, for the purposes of commerce, that their currency should be established and secured." All this is as true of bank-notes in Massachusetts as in England. They are passed from hand to hand, as money, in all the business, small and great, of every day life, and cannot ordinarily be identified by any one who receives or passes them. Whereas bills of exchange and promissory notes that are negotiated, and given or received, whether in payment or as collateral security, can always be identified, and can ordinarily be traced through their whole course of circulation. And the receiving and the disposing of them are as much a subject

5*

of entry in the books of traders and of banks, as any other of their transactions. It is, therefore, no hardship on the holders of such paper to require of them, in a case where dishonesty has been practised on him who is called on for payment, to show how they obtained it; because, from the nature of the case, they can readily do it, if they have conformed to the usual course of business. But it is totally different in the case of bank bills, which pass as money. For, as before stated, they cannot, in most cases, be identified. In entering receipts and payments on account books, neither the number nor denomination of bank bills, nor the bank that issued them, would be noted, unless for some special reason, in a special case.

We are, therefore, of opinion that the burden is not on the plaintiff, in this case, to show how he acquired the bill in suit, but that the burden is on the defendants to show that he, or Mumford and Cannon, received it under such circumstances as to prevent the maintenance of this action. As it is admitted that the plaintiff has no personal interest in the bill, but acts merely as agent for Mumford and Cannon, there can be no doubt that his action might be defeated by proof that they received the bill dishonestly.

Our views of the law of this case are supported by the opinions of distinguished judges, expressed in several cases. In *Solomons* v. *The Bank of England,* 13 East, 135, *note,* which was an action of trover for a bank-note that had been obtained by means of a forged draft, Buller, J. said : " It is certainly enough, in the case of a bank-note, to show possession, until the title is affected by evidence on the other side." Grose, J. said : " Bank-notes are to be considered as cash, and the holder has a right, in the first instance, to say that he will not tell how he came by it; but, on the other hand, the bank may take upon them the *onus* of fixing fraud upon the holder." In *King* v. *Milsom,* 2 Campb. 5, Lord Ellenborough said he must presume that the holder of a bank-note which had been lost, was a *bonâ fide* holder for a valuable consideration, and that it lay on the loser to impeach the holder's title. And in *De la Chaumette* v. *The Bank of England,* 2 Barn. & Adolph. 385, which was an action of trover by the holder of a bank

note that had been stolen, Parke, J. said: " Whoever was the bearer of the note may sue, unless it be shown that the note was not obtained *bonâ fide*, and for valuable consideration." The supreme court of Louisiana expressed a decided opinion, if they did not authoritatively adjudge, that the rule of evi-- dence, which holds in cases of bills of exchange and promis- sory notes, is not to be applied to the case of a bank-note. *Louisiana Bank* v. *Bank of United States*, 9 Martin, 398.

In the present case, there was no evidence as to the circum- stances under which Mumford and Cannon obtained the bank bill; and if the suit had been in their names, they would not have been bound to give any evidence on that point, unless the defendants had first shown some reasonable ground for doubting their honesty. As the plaintiff sues for them, and not for his own benefit, he was not bound to show, in the first instance, how they acquired the bill.

*New trial ordered.*